**Captain Robert S. COLSON, Jr.,**
**Appellant,**

v.

**Major General BRADLEY and Melvin**
**Laird, Appellees.**

**No. 72–1537.**

United States Court of Appeals,
Eighth Circuit.

Submitted Feb. 15, 1973.

Decided April 25, 1973.

Francis L. Ruppert, Clayton, Mo., for appellant.

Wendell K. Smith, Asst. U. S. Atty., Kansas City, Mo., for appellees.

Before LAY and BRIGHT, Circuit Judges, and NICHOL, District Judge.*

LAY, Circuit Judge.

On March 20, 1972, while serving as a captain in the United States Army, the petitioner, Robert S. Colson, Jr., filed in the District Court for the Western District of Missouri a petition to enjoin his pending discharge from the service on April 6, 1972, and for mandamus relief. The relief sought by petitioner was a review of his Article 138 complaint, 10 U. S.C. § 938,[1] for correction of a low efficiency report and also an award of readjustment pay upon his discharge, 10 U. S.C. § 687(a). He further sought for medical reasons to enjoin respondents from discharging him. The district court found that Colson was being discharged by the Department of the Army Active Duty Board (hereinafter DAAD Board) for reasons other than any medical infirmity or the low efficiency rating given by his superior officer, Lieutenant Colonel Zenz. Thus, extraordinary relief by mandamus was refused.

On this appeal, petitioner attacks the denial of the writ of mandamus based on the Army's failure to process his Article 138 complaint and its refusal to award readjustment pay. We reverse and order the issuance of the writ of mandamus.

Petitioner entered active duty in the Army on June 13, 1967. After five years of service Captain Colson would have been eligible for readjustment pay upon his discharge, in this case allegedly $10,670.00. At the time of his original discharge date, April 6, 1972, he had served almost four years and ten months in the service, some sixty-eight days less than five years.[2] We need not reach this issue relating to petitioner's readjustment pay since the issuance of a writ of mandamus requiring the processing of petitioner's Article 138 complaint will necessitate Captain Colson's reinstatement in the armed forces until such time that full consideration of his entire Army record can be again surveyed for purposes of proper discharge.

After distinguished service in Vietnam,[3] Captain Colson was rotated to Fort Leonard Wood, Missouri, in February of 1971 where he served as a Training Officer at the Army Engineers Training Corps. Unknown to the Army,

---

* Sitting by designation.

1. Article 138, 10 U.S.C. § 938, provides:
 "Any member of the armed forces who believes himself wronged by his commanding officer, and who, upon due application to that commanding officer, is refused redress, may complain to any superior commissioned officer, who shall forward the complaint to the officer exercising general court-martial jurisdiction over the officer against whom it is made. *The officer exercising general court-martial jurisdiction shall examine into the complaint and take proper measures for redressing the wrong complained of*; and he shall, as soon as possible, send to the Secretary concerned a true statement of that complaint, with the proceedings had thereon." (Our emphasis.)

2. For medical reasons, Colson was probably not eligible for discharge until approximately May 11, 1972. He was in fact discharged on June 30, 1972, following the dissolution of the trial court's preliminary injunction.

3. Petitioner served as a combat helicopter pilot from January to December of 1970. From this service he was awarded the Army Commendation Medal, the Air Medal nine times and the Bronze Star.

Colson began to suffer from narcolepsy in the late months of his military service. He alleges because of his illness his abilities to perform his military duties began to deteriorate. His superior officer, Lieutenant Colonel Zenz, not knowing of petitioner's illness. assessed his performance as complacent and ineffective and gave him an extremely low efficiency rating. Narcolepsy is admittedly a disease of difficult diagnosis. It is a neurological illness characterized by sleep paralysis, loss of muscle tone and hallucinations. It can, however, be medically controlled. Army regulations recognize the disease of narcolepsy and require that no personnel can be discharged prior to the time that the disease is medicinally controlled. Army Reg. 40–501. It is admitted that it was not until approximately May 11, 1972, that Colson's illness was under medical control.

 Captain Colson was given his low efficiency rating on September 9, 1971. He sought redress in November of 1971 under Article 138 and Army Regulation 27–14 which require the officer exercising general court-martial jurisdiction over petitioner's commanding officer to investigate and review the facts underlying the complaint.[4] Colson claimed that his efficiency record was inaccurate and also that it should be reviewed in light of the subsequent diagnosis of narcolepsy. Colson's superior officer, Major General Bradley, refused to investigate and review the report because he concurred in its recommendation of dismissal and felt he did not have jurisdiction over the matter. This was clearly erroneous. General Bradley, as the officer who exercised general court-martial jurisdiction over Colonel Zenz, the officer against whom the complaint was made, at the time of the incidents giving rise to the complaint and at the time of the filing of the complaint, clearly had jurisdiction.[5] Under the regulations General Bradley had the duty to investigate into the complaint in light of Captain Colson's claim regarding the inaccuracy of the report and the effect of his unknown illness. Mandamus, of course, is the appropriate remedy against members of the armed forces who fail to follow the service's own regulations. See Harmon v. Brucker, 355

---

4. For the text of Article 138, 10 U.S.C. § 938, see note 1 supra. Army Regulation 27–14 reads in part:

"9. *Action by general court-martial convening authority.* Upon receipt of the complaint, the officer exercising general court-martial jurisdiction over the respondent may:

"a. If such action has not been taken by an intermediate commander, grant the redress requested, including restoration of rights, or if he lacks jurisdiction to grant such redress, forward the complaint to the jurisdiction which has authority to grant such redress, or

"b. Delay consideration of the complaint in accordance with paragraph 3b, or

"c. Conduct an information inquiry into the complaint or direct an officer of his command senior to the respondent to do so on his behalf, or

"d. Order an investigation in accordance with AR 15–6 with respect to the alleged wrong. Upon completion of his inquiry into the complaint and action thereon (approval or denial of the requested redress), the officer exercising general court-martial jurisdiction will forward the file in accordance with the procedures outlined in paragraph 10. . . . ."

5. Jurisdiction is defined in Army Regulation 27–14:

"6. *Jurisdiction.* Jurisdiction to examine into complaints lies with the commander or his successor commander who exercised general court-martial jurisdiction over the respondent at the time of the incident giving rise to the complaint. In the event of the respondent's transfer to another general court-martial jurisdiction, the action on the complaint may also be transferred if investigation or redress will be facilitated thereby. Intermediate commanders receiving complaints will transmit the complaint and accompanying papers without delay to the appropriate general court-martial convening authority. They may add pertinent material to the file or grant the redress requested and so note in the transmittal to the appropriate general court-martial convening authority."

U.S. 579, 78 S.Ct. 433, 2 L.Ed.2d 503 (1958); Konn v. Laird, 460 F.2d 1318, 1319–1320 (7 Cir. 1972).

■ We turn then to the district court's refusal to issue the writ on the ground that Captain Colson had already been recommended for discharge on grounds independent of the low efficiency record. The district court based its conclusion on two affidavits received into evidence over strenuous objection. The affidavits were from a personnel of-ficer and a recorder of the DAAD Board who related that Colson's discharge was recommended as early as September, 1971, and that it was processed without knowledge of the low efficiency report made by his immediate superior. As-suming these affidavits constituted com-petent evidence at trial, which they clearly did not,[6] it is difficult to recon-cile that Colson was being processed for discharge at a time when it is admitted his narcolepsy was not under medical control. This clearly was invalid under the Army's regulations. See Army Reg. 40–501. Furthermore, the affidavits leave some doubt whether his efficiency rating was not in fact considered in some formal or informal way by the Board, if not by the Board's investiga-tors.

It may be true that a vast organiza-tion such as the United States Army may not on occasion know what in fact both its right and left hands are doing; however, the law deems it legally bound to have sufficient knowledge of all of its own records so as not to prejudice the individual rights of its service person-nel. Thus, any consideration of Colson's discharge while he was still suffering from narcolepsy which was not medically controlled must be vacated from his records. Moreover, we cannot assume that the ultimate discharge was done in disregard of Captain Colson's entire service record including his low efficien-cy rating.[7]

We find that mandamus relief to af-ford proper redress to Captain Colson under Article 138 should have been giv-en. The issue was not shown to be moot.

■ Unfortunately, the preliminary injunction was dissolved and the Army was allowed to discharge Colson. Al-though only a member of the armed forces is entitled to redress under Arti-cle 138, petitioner's rights cannot be de-nied on lack of standing since it was the Army's error which led to his present nonmilitary status. Colson's discharge should be vacated as of the date of its issuance, and he should be restored to the status he enjoyed at the time he filed his complaint; the commanding of-ficer having jurisdiction of his com-plaint is ordered to review and investi-gate his claims, and the DAAD Board is required to stay his discharge until such time that petitioner's entire service record is before it.

Judgment reversed and remanded with directions for the district court to issue the writ of mandamus against respond-ents in accordance with this opinion.

6. The affidavits were not admissible as competent evidence. Both were hearsay. Neither affiant was available for purposes of cross-examination.

7. In fact, a letter from the Department of Army Active Duty Board received by petitioner on December 23, 1971, declared: "[A]ll factors were considered, includ-ing your efficiency ratings, comments on your efficiency reports, schooling, commendations, and types and varieties of assignments."