John E. AMPLEMAN, Appellant,

v.

Honorable James R. SCHLESINGER, Secretary of Defense, and John L. McLucas, Secretary of the Air Force, Appellees.

No. 75–1676.

United States Court of Appeals, Eighth Circuit.

Submitted March 11, 1976.

Decided April 27, 1976.

Francis L. Ruppert, Clayton, Mo., for appellant.

Joseph B. Moore, Asst. U. S. Atty., St. Louis, Mo., with Donald J. Stohr, U. S. Atty., St. Louis, Mo., for appellees.

Before WEBSTER and HENLEY, Circuit Judges, and TALBOT SMITH,* Senior District Judge.

TALBOT SMITH, Senior District Judge.

The appellant (hereafter plaintiff) appeals his involuntary separation, by honorable discharge, from the United States Air Force. He argues that he has been denied due process and the equal protection of the laws. Upon cross-motions for summary judgment, defendants' motion was granted. We affirm.

Shortly after plaintiff's assignment to combat flying duties in Vietnam, he expressed to his superiors his apprehensions concerning flying in combat and requested assignment to ground duties. This essential element of fact cannot be denied on the record. The matter was first heard by the Air Force Personnel Board, vested with jurisdiction in the premises by Air Force Regu-

* TALBOT SMITH, Senior District Judge, Eastern District of Michigan, sitting by designation.

lation (hereafter AFR) 36–3, Sect. E, which Board concluded and recommended that plaintiff be discharged from the Air Force.[1] Following the completion of the prescribed procedures under AFR 36–3, plaintiff was honorably discharged on September 29, 1972. Subsequent thereto, he sought relief from the Air Force Board for Correction of Military Records (hereafter AFBCMR),[2] seeking return to active duty, removal from records of all evidence of AFR 36–3 action and discharge, payment of back pay and allowances, and retention of his date of rank and continuous active service. Such relief was denied on September 27, 1973 on the ground that "a careful consideration by the Board of your military record, together with such facts as have been presented by you, fails to establish a showing of probable error or injustice in your case."

The plaintiff before us, as noted, claims a lack of due process in AFR 36–3, both in general and as applied to him,[3] as well as a lack of due process in the denial, by the AFBCMR, of the relief there sought under AFR 31–3, in addition to a denial of equal protection under the Fourteenth Amendment.

These allegations as to due process stem from the fact that under the regulations a probationary officer is not entitled to a hearing in person, and that his burden is to establish, against the charges made, that he should be retained in the service. He alleges also that his appeal to the AFBCMR was not "meaningful" because he was denied a personal appearance, and, in addition, that neither the Air Force Personnel Board nor the AFBCMR made findings of fact or conclusions of law.

■ We turn, then, to the question of whether or not the plaintiff officer had a constitutional right to a hearing on the decision that he be discharged, as well as a statement of reasons therefor. It is clear that he does not.

The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property.

*Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 569, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548, 556 (1972).

■ A property right involves more than a hope, or a unilateral expectation of continued service. In *Roth, supra,* it was the holding of the Court that a nontenured professor, who had no right to contract renewal, either by the express terms of his contract, or any reasonable implication therefrom, had no property interest in continued employment:

To have a property interest in a benefit, a person clearly must have more than

---

1. The Letter of Notification of Initiation of Action under AFR 36–3, dated 9 June 1972 stated:
   2. I am initiating this action because you failed to demonstrate acceptable qualities of leadership required of an officer in your grade; you failed to properly discharge assignments commensurate with your grade and experience and demonstrated a defective attitude in that; on 26 April 1972, while TDY to the Republic of Vietnam, you stated that you were unable to continue flying combat missions and requested that you be assigned non-combat duties.

       \*   \*   \*   \*   \*   \*

   4. Within 15 calendar days after you receive this correspondence you may:

       \*   \*   \*   \*   \*   \*

   c. Submit any written statements or other documentary evidence that you feel should be considered in evaluating your case. \* \*

Plaintiff's position, as stated in his letter of July 7, 1972, intended to show cause why he should not be discharged, was substantially that he did not have a defective attitude simply because he did not want to fly combat missions, since he was willing to continue flying in other situations.

2. See 10 U.S.C. § 1552; AFR 31–3, Sect. A–3: "The function of the Board is to determine the existence of an error or injustice and, when appropriate, to make recommendations to the Secretary of the Air Force."

3. The doctrine of *Colson v. Bradley,* 477 F.2d 639 (8th Cir. 1973), that a judicial remedy may be asserted against members of the armed forces who fail to follow the service's own regulations, is not presented on these facts. The gravamen of the charge made is that the regulations themselves deny the plaintiff procedural due process. *Cf. Griffin v. People of State of Illinois,* 351 U.S. 12, 18, 76 S.Ct. 585, 590, 100 L.Ed. 891, 898 (1956).

an abstract need or desire for it. He must have more than a unilateral expectation of it.

\* \* \* \* \* \* .

[The] terms [of plaintiff's appointment] secured his interest in employment up to June 30, 1969. But the important fact in this case is that they specifically provided that the respondent's employment was to terminate on June 30. They did not provide for contract renewal absent "sufficient cause." Indeed, they made no provision for renewal whatsoever.

Thus, the terms of the respondent's appointment secured absolutely no interest in re-employment for the next year. They supported absolutely no possible claim of entitlement to re-employment. Nor, significantly, was there any state statute or University rule or policy that secured his interest in re-employment or that created any legitimate claim to it. In these circumstances, the respondent surely had an abstract concern in being rehired, but he did not have a *property* interest sufficient to require the University authorities to give him a hearing when they declined to renew his contract of employment. (Emphasis in original.) (Footnote omitted.)

408 U.S. at 577–578, 92 S.Ct. at 2709, 33 L.Ed.2d at 561.

The reasoning is equally applicable here. In the situation before us there is no contractual or other right to continued employment. The plaintiff here was a reserve officer subject to discharge "at the pleasure of the President." 10 U.S.C. § 1162.[4] One subject to such discharge enjoys no property right to continued employment.[5]

■ Plaintiff also argues that "the consequences of the discharge and the underlying reasons, can and do impose a stigma upon

the officer stripped of his rank as a result of the proceedings." What plaintiff is suggesting here is a violation of his liberty interest upon the principle expressed in *Wisconsin v. Constantineau,* 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971) that "[w]here a person's good name, reputation, honor or integrity is at stake," due process requires that he be given notice and an opportunity to be heard. We do not reach the questions, if there are any, of adequacy of notice in this case or opportunity to be heard. The threshold determination to be made is whether or not a stigma has been imposed. We are not so persuaded. Neither by code or other designation does the honorable discharge give notice of the underlying reason therefor. Whatever may have been the situation in the past, at the present time:

The Air Force no longer uses the code which would have revealed the reason for his discharge. The discharge paper which he is now about to receive will not reveal the reason for the discharge. Moreover, Air Force regulations prescribe that reasons for the separation are to be furnished only to the serviceman.[10]

[10] Air Force Regulation 35–6, ¶ 4–6, effective 1 May 1974.

*Sims v. Fox,* 505 F.2d 857, 862 (5th Cir. 1974) (en banc), *cert. denied,* 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 678 (1975). (Footnote in original.)

It is highly speculative to argue that the regulation of the Air Force respecting the nondisclosure of its confidential files might at some time be disregarded by someone to plaintiff's detriment. No assertion is found in the complaint tendered that plaintiff has been jeopardized in any manner in his employment by his receipt of an honorable discharge.

408 U.S. 593, 601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570, 579 (1972). The point is that such rights must have their origin in a reasonably identifiable source, not merely in a personal hope or expectation. *Sims v. Fox,* 505 F.2d 857, 862 (5th Cir. 1974) (en banc), *cert. denied,* 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 678 (1975).

---

**4.** *See also* AFR 36–3, Sect. A(3):

An individual does not have an inherent right to continued service as an officer. It is a privilege which may be terminated when such action is determined to be in the best interest of the Air Force.

**5.** We are not suggesting that property rights may not be derived from sources other than statute or contracts. *See Perry v. Sindermann,*

We conclude that plaintiff has not shown that he was deprived of a liberty or property interest under the Fifth or the Fourteenth Amendments.

█ Plaintiff complains, as well, of lack of a hearing or representation by counsel for probationary officers under AFR 36–3, Sect. E. He points out that nonprobationary officers, as well as others of extended service, are granted hearings, with or without counsel. This differentiation, he asserts, denies him the equal protection of the laws under the Fourteenth Amendment. Assuming, arguendo only, that the federal government is required to observe a general rule of equal protection, under this Amendment, as applied to the various grades of those in the military services, a proposition completely without precedential support, we are of the opinion that no violation of such principle can here be found. The matter deserves only brief comment [6] since the rational basis for the distinction made is clear, and lies in the necessity for the armed services to control and govern, each according to his duties, his experience, and his service, those who come within the sphere of its military operations. Equal protection does not demand that all in the armed services, from recruit to veteran, stand on a par with respect to their service rights, duties, obligations, and the disciplines applicable thereto.

> [T]he rights of men in the armed services must perforce be conditioned to meet certain overriding demands of discipline and duty, and the civil courts are not the

agencies which must determine the precise balance to be struck in this adjustment.

*Burns v. Wilson, Secretary of Defense,* 346 U.S. 137, 140, 73 S.Ct. 1045, 1048, 97 L.Ed. 1508, 1514 (1953). (Footnote omitted.)

█ The plaintiff charges also that his Fifth Amendment rights have been violated in that "[a]t least three highly significant documents which Appellant either furnished or attempted to furnish, were not considered by [the Air Force Personnel] Board in arriving at its conclusions." [7]

The lack of merit in the charge made is that it refers only to the first stage in the separation process before us. The decision or recommendation of the Personnel Board above referred to was not the final decision made in the case and is not the decision from which appeal to the federal courts was taken. The final responsibility for correction of probable error or injustice rests with the AFBCMR,[8] a fact clear from the regulations and recognized by plaintiff in his argument that we should "remand the case to the District Court so that Ampleman's challenge to the adverse decision of the Air Force Board for Correction of Military Records can be adjudicated." But this Board had before it, at the time of final decision, plaintiff's entire file, including plaintiff's AFR 36–3 administrative discharge file, compiled by the Personnel Board, as well as his entire Master Personnel File, which files contained the essential facts set forth in the instruments described. Its conclusion, after "a careful considera-

---

6. For a discussion of the principles involved in the relationship between the Fourteenth and Fifth Amendments, as regarding equal protection claims against the federal government, *see* P. Kauper, Constitutional Law 690 (4th ed. 1972) and Kauper's Constitutional Law 79 (Supp.1975).

7. The first related to plaintiff's performance of ground duties after his request for relief from combat duty had been granted. He had been assigned for some two weeks to a ground-to-air communication facility in a remote area of Vietnam under the immediate supervision of a Colonel Tilton. Colonel Tilton's favorable letter as to plaintiff's performance of this duty did not reach the Air Force Personnel Board prior to its action, although the request therefor was

before it. The second was a verification that he was on flight status for one day in May of 1972. The fact of this status was not only never disputed but was in fact before the Board in plaintiff's statements to it of his version of the facts. The third statement was a favorable efficiency report upon his performance of duties in the accounting and finance office of the squadron after he had been returned to Korea in compliance with his request to be relieved of combat duty.

8. "The court's function * * * was confined to a review of the evidence submitted to the Board for Corrections." *Sanford v. United States,* 399 F.2d 693, 694 (9th Cir. 1968).

tion by the Board of [plaintiff's] military record," was that he had suffered no injustice nor had there been probable error. We find herein no violation, as charged by plaintiff, of his Fifth Amendment rights.

We are mindful of course, that: [J]udges are not given the task of running the Army. The responsibility for setting up channels through which such grievances can be considered and fairly settled rests upon the Congress and upon the President of the United States and his subordinates. The military constitutes a specialized community governed by a separate discipline from that of the civilian. Orderly government requires that the judiciary be as scrupulous not to interfere with legitimate Army matters as the Army must be scrupulous not to intervene in judicial matters.

*Orloff v. Willoughby, Commandant,* 345 U.S. 83, 93–94, 73 S.Ct. 534, 540, 97 L.Ed. 842, 849 (1953).

Pertinent, also, is the holding of Judge Prettyman in *Harmon v. Brucker,* 100 U.S. App.D.C. 190, 243 F.2d 613, 619 (1957), *rev'd on other grounds,* 355 U.S. 579, 78 S.Ct. 433, 2 L.Ed.2d 503 (1958), who, relying on separation of powers, held that:

Reason, flowing from the doctrine of the separation of powers, dictates that in many fields the administrative discretion of the executive branch and the legislative discretion of the legislative branch be not subject to interference or review by the courts. In no field is this doctrine more pertinent and important than in the operation of the armed forces. Provisions for the establishment and operation of such forces necessary to the security of this country are wholly legislative matters, and the administration of those forces is the very essence of executive action. The Constitution so provides. Only in the most extreme cases can the judiciary interfere in this area.

The facts of this case, and the interpretation of those facts, together with the military results flowing therefrom, are purely matters of the proper administration of the Air Force. They involve the matter of assignment to duty in the most critical of operations, namely combat. The considerations involved literally go to matters of life and death, both of an individual and his fellows, in the air and on the ground. This is an area into which we will not intrude, save as to matters of constitutional moment, none of which do we find presented here.[9]

We have carefully reviewed the entire record and find no merit in further arguments presented.

---

9. *Hodges v. Callaway,* 499 F.2d 417 (5th Cir. 1974). *Cf. Horn v. Schlesinger,* 514 F.2d 549 (8th Cir. 1975).