EMERGENCY DISASTER LOAN ASSOCIATION, INC., a Washington non-profit corporation, and John Kortus, representing the Class, Plaintiffs-Appellants.

v.

John R. BLOCK\*, Secretary of Agriculture of the United States; Samuel R. Pierce,\* Secretary of HUD of the United States; H. Allan Brock,\* National Administrator of Federal Farm Home Administration of the United States; James E. Lee, Director of the Emergency Loan Division of Federal Farm Home Administration of the United States; George A. Lincoln, Director of the Office of Emergency Preparedness of the United States; and Michael Horan, Administrator of Federal Farm Home Administration of the State of Washington, Defendants-Appellees.

No. 79–4765.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 3, 1981.

Decided Aug. 17, 1981.

---

\* The named federal officials have been substituted for Bob Bergland, former Secretary of Agriculture, Carla Hills, former Secretary of Housing and Urban Development, and Frank Elliott, former National Administrator of Federal Farm Home Administration, pursuant to Rule 43(c) of the Federal Rules of Appellate Procedure.

Boochever, Circuit Judge, concurred and filed opinion.

John F. Bury, Bantz, Klobucher & Clemons, Spokane, Wash., for plaintiffs-appellants.

Robert M. Sweeney, Asst. U.S. Atty., Spokane, Wash., for defendants-appellees.

Before CHOY and BOOCHEVER, Circuit Judges, and FRYE,** District Judge.

CHOY, Circuit Judge:

Appellants appeal from a judgment of the United States District Court denying their claim for a writ of mandamus. We affirm.

## I. Facts

The appellant Emergency Disaster Loan Association (EDLA) is a non-profit corporation representing a group of farmers and ranchers in northeastern Washington who failed to apply for emergency assistance loans from the Farmers Home Administration (FmHA) during the period of 1973–74 when the FmHA was authorized to make such loans. The individual appellant, John Kortus, is a dairy farmer residing in Chewelah, Washington.[1] The appellees are various federal officials, including the Secretary of the Department of Agriculture (the Secretary) and certain subordinate officials of the FmHA, an agency within the Department of Agriculture. The claims of the appellants are based upon asserted acts and omissions of the appellees, and their predecessors in office, in the performance of their official duties as federal officers.

Title III of the Consolidated Farm and Rural Development Act, 7 U.S.C. §§ 1961–1969, authorizes the FmHA to make emer-

---

** The Honorable Helen J. Frye, United States District Judge for the District of Oregon, sitting by designation.

1. Appellants' original Complaint for Declaratory Judgment and Mandamus Relief was filed on August 2, 1976, and was answered on October 4, 1976. Appellants amended the Complaint on October 6, 1977; the Amended Complaint was answered on November 10, 1977. Appellants' cause of action was ordered to be maintained as a class action on May 8, 1978, and the class was defined on May 30, 1978.

gency loans to farmers in areas where the Secretary of Agriculture finds there is a general need for agricultural credit due to a natural disaster and declares that farmers and ranchers in the area are eligible for emergency assistance under the Act.

By proclamations published in the Federal Register in August and September 1973, the Secretary found that a general need for agricultural credit existed in five counties in eastern Washington and declared farmers and ranchers in the five counties eligible for emergency assistance loans. Under the then applicable provisions of the Consolidated Farm and Rural Development Act, emergency assistance loans were repayable at five percent interest. Applicants for such loans were required to show they were unable to obtain credit from commercial lenders. 7 U.S.C. § 1964.

The 1973 regulations concerning the administration of emergency assistance loans provided that when the Secretary designated an area eligible for emergency loans the state FmHA director would immediately notify the county FmHA offices involved and would "make such public announcements as appear appropriate." 7 C.F.R. 1832.3(b) (1973). The same regulations provided that the county FmHA supervisors involved would "make such public announcements as appear appropriate," and would explain to other agricultural lenders in the area the assistance available under the emergency loan program.

When the five counties were designated by the Secretary as eligible for emergency assistance loans the state and county FmHA directors publicized the availability of loans in various ways, including news releases to the Associated Press, the United Press International, local newspapers, and a personal appearance by one county director on a farm news program that was broadcast to the five-county area. All of the announcements stated, among other things, that, in order to be eligible for an emergen-

cy assistance loan, the applicant must show he could not obtain credit elsewhere. Many farmers were ineligible for the loans because they were able to obtain commercial credit, and from August 1973 to January 1, 1974, only 11 emergency loans were granted by the FmHA to applicants in the five-county area.

On January 2, 1974, Congress enacted the Small Business Appropriation Act (SBAA), Pub.L.No. 93–237. Section 4 of this act authorized the Secretary of Agriculture to provide emergency assistance loans to farmers and ranchers in emergency disaster areas in accordance with Section 5 of Pub. L.No. 92–385, despite the repeal of that act on April 20, 1973, by Pub.L.No. 93–24.[2]

Section 10(a) of the SBAA removed the requirement that applicants for emergency loans be unable to obtain credit elsewhere. However, the authority of the Secretary to grant loans with Section 5 terms was limited to areas where the natural disaster occurred after December 26, 1972, and prior to April 20, 1973. These provisions were applicable to the emergency designation of the five northeastern Washington counties.

On January 4, 1974, the Secretary of Agriculture sent telegrams to all state FmHA directors advising them of the enactment of the SBAA and directing them to continue to accept applications for emergency loans. They were, however, not to process the applications until they received further instructions. This directive was followed by Washington State FmHA officials.

On February 15, 1974, the National Office of the FmHA issued Instruction 441.5 entitled "Special Emergency Loan Policies and Authorizations Implementing Applicable Provisions of Public Law 93–237," paragraph II A which stated in part:

> State Directors and County Supervisors will inform the news media including newspapers, radio and television in the affected counties of the provisions of P.L. 93–237. A suggested news release for local use is attached as Exhibit C.

---

**2.** Section 5 authorized the Secretary of Agriculture to cancel up to $5,000 of the principal indebtedness on emergency loans and to reduce the interest rate on remaining balances to one

percent. The provisions of Section 5 were applicable until July 1, 1973. However, on April 20, 1973, by Pub.L.No. 93–24, Congress repealed Section 5.

The sample news release did not state that an applicant would be relieved of the eligibility requirement of showing that he or she could not obtain credit elsewhere, nor did it state that cancellation of up to $5,000 of the loan principal together with a reduced interest rate was available.

Washington state and county FmHA officials sent out several news releases, most of which did not mention the provisions of the SBAA. In addition to sending the news releases, however, the FmHA county supervisors contacted the 11 borrowers who had obtained emergency loans prior to enactment of the SBAA and asked them to come to the county FmHA offices to determine if they would be eligible for additional benefits under the new law. The supervisors also contacted previous unsuccessful loan applicants and solicited new applications in light of the new law. One county supervisor even mailed fact sheets on the SBAA to all active borrowers on file in his office.

The FmHA granted 172 emergency loans to farmers and ranchers in northeastern Washington, 161 of which were made after the enactment of the SBAA.

Appellants brought this action against the Secretary of Agriculture asserting that the Secretary had failed to perform his duty to give "adequate public notice" of the provisions of the SBAA. They sought a writ of mandamus to compel the FmHA to reopen the period in which the farmers could apply for emergency loans. The district court entered judgment for the government, finding that although the notice was inadequate, the method of its dissemination was not subject to judicial review by mandamus and that all due process requirements were satisfied. This appeal followed.

## II. *Analysis*

### A. *Mandamus Action*

In *United States ex rel. McLennan v. Wilbur*, 283 U.S. 414, 420, 51 S.Ct. 502, 504, 75 L.Ed. 1148 (1931), the Supreme Court discussed the issuance of mandamus against federal officials. The Court stated:

Under the established rule the writ of mandamus cannot be made to serve the purpose of an ordinary suit. It will issue only where the duty to be performed is ministerial and the obligation to act peremptory, and plainly defined. The law must not only authorize the demanded action, but require it; the duty must be clear and indisputable. (Citations omitted.)

Appellants argue that mandamus is proper because the Secretary was obligated to give them "adequate" notice of changes in the eligibility requirements for emergency disaster loans. They contend that this was required under 7 C.F.R. Part 1832.3(b)(3) (1973) which provided:

(3) When an area is designated by the Secretary, the National Office will notify the State Director and the Finance Office regarding such area designation. The notification will specify the period within which initial loans may be made to new applicants as a result of the disaster for which the area was designated. The State Director will notify immediately the county offices involved and this notification will be confirmed by a State requirement issued as soon as possible. The State Director also will notify the State USDA Defense Board Chairman and will make such public announcements as appear appropriate.

(i) Immediately upon receiving notice of the designation of counties under his jurisdiction, the County Supervisor will notify the appropriate County USDA Defense Board Chairman and *make such public announcements as appear appropriate.* Also, the County Supervisor will explain to other agricultural lenders in the area the assistance available under the EM loan program. (Emphasis added.)

■ The government maintains that the provision of this regulation concerning appropriate public announcements was applicable only to the original designation of the five counties as a natural disaster area eligible for emergency assistance loans and did not apply to the manner in which information concerning the SBAA was disseminated. We agree.

In *Wilbur v. United States*, 281 U.S. 206, 218–19, 50 S.Ct. 320, 324, 74 L.Ed. 809 (1930), the Supreme Court stated:

> The duties of executive officers ... usually are connected with the administration of statutes which must be read and in a sense construed to ascertain what is required. But it does not follow that these administrative duties all involve judgment or discretion of the character intended by the rule just stated. Where the duty in a particular situation is so plainly prescribed as to be free from doubt and equivalent to a positive command it is regarded as being so far ministerial that its performance may be compelled by mandamus, unless there be provision or implication to the contrary. *But where the duty is not, thus plainly prescribed but depends upon a statute or statutes the construction or application of which is not free from doubt, it is regarded as involving the character of judgment or discretion which cannot be controlled by mandamus.* (Footnotes omitted.) (Emphasis added.)

7 C.F.R. § 1832.3(b) is entitled *Designation by the Secretary*. The wording is specifically directed to the original designation. No mention of any continuing obligation is made. In addition, the SBAA contains no notification requirement. The regulation does not set forth the type of "free from doubt" duty of performance which may be compelled by mandamus.

Neither can Special Instruction 441.5 provide the basis for a mandamus action. The issuance of this special instruction was discretionary with the Secretary and therefore did not violate any mandatory language of the SBAA. Such action is not subject to judicial review in a mandamus action.[3]

**B.** *Due Process Claim*

Appellants argue that the failure of the Government to give "adequate" notice of the new law denied them their right to procedural due process by effectively denying them their right to apply for a loan. The district court addressed this issue by concluding that:

> This Court knows of no duty on the Secretary to insure that every potential beneficiary in northeastern Washington had actual notice of the specific benefits under P.L. 93–237 for which they might be eligible.
>
> While due process does *not* require the Secretary to affirmatively go forward and contact each and every farmer in the area, it does require the Secretary to make the loans available and announce the availability of the loans. Although the best methods were not employed, the Court finds that the Secretary did satisfy all due process requirement with regard to the emergency disaster loans.

■ We agree. The due process argument appears to be based on the contention that the agency had some type of duty to inform the farmers of the change in eligibility requirements. As discussed above, neither the law nor any cited regulation creates such a duty.

■ The implication of appellants' argument is that any law which confers benefits on an individual automatically imposes a due process notice requirement on the government. We reject this argument. The government is not obligated to notify persons of their eligibility for benefits unless required to do so by statute. There was no such requirement in this case. *Cf. Denton v. United States*, 638 F.2d 1218 (1981).

---

**3.** *Commonwealth of Pennsylvania v. National Association of Flood Insurers*, 420 F.Supp. 221 (M.D. Penn. 1976), involved a somewhat similar issue. The Commonwealth sought a writ of mandamus against the National Association of Flood Insurers, the Secretary of Housing and Urban Development and the United States of America based on an alleged failure of the Secretary to comply with his statutory duty to publicize and sell flood insurance to persons in flood areas in Pennsylvania. The district court held that " 'the time and manner of acting' to disseminate information are matters of discretion which are not open to review by this court in a mandamus action." *Id.* at 225, *quoting Commonwealth of Pennsylvania v. National Association of Flood Insurers*, 520 F.2d 11, 26 (3rd Cir. 1975).

III. *Conclusion*

The actions of the Secretary were discretionary and are not subject to review in a mandamus action. In addition there was no due process violation. The judgment of the district court is AFFIRMED.

BOOCHEVER, Circuit Judge, concurring.

Unlike the majority, I believe that the issuance of Special Instruction 441.5, although discretionary with the Secretary, could form the basis for a mandamus action against the state director of the Federal Farm Home Administration of the State of Washington, in the event of his failure to comply.

The special instruction issued by the national office of the FmHA stated in part:

> State Directors and County Supervisors will inform the news media including newspapers, radio and television in the affected counties of the provisions of P.L. 93–237. A suggested news release for local use is attached as Exhibit C.

Although the initial issuance of the order may have been discretionary, once it was issued it had to be followed.[1] *State ex rel. Board of Education v. Pfeifle*, 86 S.D. 237, 193 N.W.2d 581 (1972), clearly indicates that once the Secretary issued the special instruction, the local officials had a ministerial duty to follow it and therefore mandamus would lie to compel performance of that duty.

In *Pfeifle*, the county board of education had discretion to determine whether to combine areas into one school district. *Id.* 193 N.W.2d at 585. It elected to exercise that discretion and adopted a motion directing the school superintendent to issue such orders as necessary to combine the areas. The superintendent issued the orders but the county officers took no action. The court stated:

Finally, we conclude that the court did not err in granting relief by way of mandamus. The defendant officers were not clothed with any discretion in complying with the order served upon them by the county superintendent of schools pursuant to the decision of the county board of education. Their duties were completely ministerial in nature the performance of which could properly be compelled by mandamus.

Similarly here, once the Secretary exercised his discretion to require that the state directors and county supervisors, "inform the news media ... of the provisions of P.L. 93–237," the local officials' duty was ministerial and could be compelled by mandamus. *See also Colson v. Bradley*, 477 F.2d 639, 641 (8th Cir. 1973) (although adoption of regulations by agency may be discretionary, once adopted, mandamus is appropriate remedy against lesser official who refuses to follow such regulations). *Cf. Mora County Board of Education v. Valdez*, 61 N.M. 361, 300 P.2d 943 (1956) (where superior merely recommends rather than orders the performance of an act by a subordinate, mandamus is not appropriate remedy).

The special instruction, however, included a suggested news release. While that release did not set forth some of the material provisions of the new law, it is not disputed that the state officials sent out news releases embodying the provisions of the suggested one. There was thus substantial compliance with the directive. Obviously the extraordinary remedy of mandamus[2] will not lie against an official who has substantially complied with a directive. For that reason I join in affirming the judgment of the district court.

---

1. *See Berends v. Butz*, 357 F.Supp. 143, 152 (although Secretary of Agriculture has discretion to designate an emergency loan area, once the discretion has been exercised Secretary has no discretion to halt program).

2. *U. S. v. United States District Court, Central District of California*, 509 F.2d 1352, 1354 (1975) cert. denied, 421 U.S. 962, 95 S.Ct. 1949, 44 L.Ed.2d 448.